UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/2020

In re:

WEST 125th STREET LIQUORS

        Debtor.

---

VANESSA RODRIGUEZ,

        Appellant,

-against-

ALBERT TOGUT AS CHAPTER 7 TRUSTEE,

        Appellee.

18 Civ. 11623 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Vanessa Rodriguez appeals from a judgment entered by the United States Bankruptcy Court for the Southern District of New York, in an adversary proceeding arising out of the bankruptcy of West 125th Street Liquors Inc. ("Debtor"). Notice of Appeal, ECF No. 1. Albert Togut, in his capacity as the Chapter 7 Trustee of Debtor's bankruptcy estate (the "Trustee"), initiated the proceeding against Rodriguez, claiming that Debtor made a number of payments to her between 2012 and 2014, which constituted constructive fraudulent transfers. App. at 146–57.[1] After Rodriguez failed to appear for trial in that proceeding, the bankruptcy court heard testimony and received exhibits from the Trustee, found that Rodriguez had received the payments and that they constituted constructive fraudulent transfers, and entered judgment against her. *Id.* at 247–67. Rodriguez appeals, claiming that she was denied the opportunity to

---

[1] On appeal, the Trustee filed a continuously paginated appendix, which is split into two documents. ECF Nos. 14-2 (pp. 1–172), 14-3 (pp. 173–350). The Court will cite to pages in the continuously paginated appendix, rather than the separate filings.

present her case and that the bankruptcy court erred in finding that she had received the payments. Appellant Br. at 1–2, ECF No. 13. The Court holds that the bankruptcy court proceeded appropriately when Rodriguez did not appear for trial, and its factual findings were not clearly erroneous. Accordingly, the bankruptcy court's judgment is AFFIRMED.

## BACKGROUND

I. Pretrial Proceedings

On November 10, 2015, Debtor filed a corporate case, *pro se*, seeking relief pursuant to Chapter 11 of the Bankruptcy Code in the bankruptcy court. *See* App. at 1. On December 15, 2015 the bankruptcy court converted the case to one under Chapter 7 of the Bankruptcy Code. *Id.* at 26. On December 16, 2015, the Trustee was appointed. *Id.* at 28.

On November 3, 2017, the Trustee commenced an adversary proceeding against Rodriguez, seeking to recover a series of transfers totaling $140,450 made by Debtor to her, which the Trustee argued constituted constructive fraudulent transfers. *Id.* at 146–58. On November 10, 2017, the complaint and summons were served on Rodriguez via mail. *Id.* at 160–61.

On December 6, 2017, Rodriguez, proceeding *pro se*, filed an answer. *Id.* at 178–85. She asserted that "[t]he [t]ransfers or [c]hecks were fraudulently deposited into and then withdrawn from a bank account, without [her] knowledge or consent, by Hamlet Peralta, or his agents, by forging [her] signature, or intentionally conducting other fraudulent activities to access the funds." *Id.* at 184. Peralta is the brother of Debtor's owner.[2] *Id.* at 277. Attached to

---

[2] In 2017, Peralta pleaded guilty to wire fraud in connection with Debtor; he allocuted to operating a Ponzi scheme in which he obtained funds from investors on the pretense that they would be used to purchase and resell alcohol, and then used the funds either to pay back other investors or for his own benefit. *See* Transcript of Plea, *United States v. Peralta*, Case No. 16 Cr. 354 (S.D.N.Y May 11, 2017) at 29:2-24, ECF No. 71. The Court may take judicial notice of this proceeding. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d

the answer was a handwritten statement that Rodriguez held out as "a police report documenting Peralta's actions . . . filed on December 5, 2017." *Id.* at 184, 186. In the report, Rodriguez states that after being served with the summons and complaint, she visited her bank and discovered that her bank records showed that "[l]arge amounts of money were deposited and immediately withdrawn on the same day" in multiple transactions, but that she "did not accept payment of these checks; neither did [she] withdraw the money." *Id.* at 186. She stated that she spoke with bank personnel, and "they confirmed that these large amounts of money could only be withdrawn by the person whose name is on the account after showing identification," and that "[t]he only explanation they could give as to how the money could have been withdrawn without my presence is either [that] someone used a fake ID with my identity or the person had an insider in the bank allowing him/her to withdraw illegally." *Id.*

On April 5, 2018, the Bankruptcy Court entered a case management and scheduling order, which fixed the dates for the completion of discovery in the adversary proceeding, required the parties to submit a proposed joint pretrial order on August 10, 2018, and set a pretrial conference for August 23, 2018. *Id.* at 204–06. The same day, the Trustee served a copy of the Case Management Order on Rodriguez via mail. *Id.* at 207–08. The Trustee served initial disclosures and document requests on Rodriguez on April 20, 2018, and interrogatories on April 30, 2018. *Id.* at 209–12. According to the Trustee, Rodriguez did not "meaningfully participate" in fact discovery, and did not seek to depose Peralta. Appellee Br. at 5, ECF No. 14. On June 29, 2018, the Trustee served a copy of his expert report on Rodriguez. App. at 213–14. On August 10, 2018, the Trustee submitted a proposed pretrial order in which he represented that he sought input on the order from Rodriguez but did not receive a response. *Id.* at 215. The

---

Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

proposed order did not include a list of exhibits or witnesses from Rodriguez. *Id.* at 215–28. On August 23, 2018, the bankruptcy court entered the pretrial order. *Id.* at 229.

At the final pretrial conference, trial was set for October 16, 2018, but on October 30, 2018, trial was rescheduled to November 20, 2018. *Id.* at 230–31. Notice of the trial date was served on Rodriguez by mail. *Id.* at 232–33. The Trustee represents that the trial date was moved several times following the final pretrial conference on the motion of the court, and that the Trustee informed Rodriguez by email of each change. Appellee Br. at 6.

II. Trial

On November 20, 2018, the Trustee appeared for trial; Rodriguez did not. App. at 251. The bankruptcy court proceeded in Rodriguez's absence. *Id.* The Trustee's case consisted of the testimony of one witness, Andrew Plotzker, CPA, whom the court qualified as an expert in forensic accounting. *Id.* at 251–58. Plotzker testified that he had reviewed Debtor's books, bank statements, and other evidence. *Id.* at 258. Having done so, he testified that Debtor was insolvent as of December 31, 2011, and remained insolvent until it filed a bankruptcy petition. *Id.* at 260. Plotzker also testified that he had reviewed bank statements and cancelled checks specific to Rodriguez, that there were 23 checks made out to Rodriguez from Debtor, and that Rodriguez's individual bank account showed deposits matching each check. *Id.* at 262–64. The court received the 23 checks into evidence as Plaintiff's Exhibits 2 through 24. *Id.* at 264; *see id.* at 328–50. Plotzker further testified that there was no evidence in Debtor's books and records that Rodriguez had performed any services for or provided any goods to Debtor, and that there was no evidence that she provided consideration for the transfers. *Id.* at 264–66.

Based on the testimony and exhibits presented, the bankruptcy court found that Debtor made transfers to Rodriguez in the amount of $140,450, that Rodriguez knew that the transfers

4

were occurring and being deposited in her account, that she provided no consideration or reasonably equivalent value for the transfers, and that Debtor was insolvent when it made the transfers. *Id.* at 266–67. Based on those findings, the court entered judgment against Rodriguez in the amount of $140,450. *Id.* at 266. On November 26, 2018, the court issued a judgment in that amount, and closed the case. *Id.* at 235–37.

## ANALYSIS

I. Standard of Review

When reviewing judgments rendered by bankruptcy courts, district courts act as appellate courts. *See In re Sanshoe Worldwide Grp.*, 993 F.2d 300, 305 (2d Cir. 1993); 28 U.S.C. § 158(a). Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *In re Bennett Fundings Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). "[T]he burden of demonstrating that the Bankruptcy Court's findings of fact are clearly erroneous rests squarely on the shoulder of the appellant," and "[a] lower court's choice between two permissible views of the facts cannot be held to be clearly erroneous." *In re Kollel Mateh Efraim, LLC*, 456 B.R. 185, 191 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). Rather, on factual matters, a reviewing court may "reverse the bankruptcy court only if [it is] 'left with the definite and firm conviction that a mistake has been committed.'" *In re Smith*, 321 F. App'x 32, 33 (2d Cir. 2009) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001)).

"[P]leadings submitted by a pro se litigant must be construed liberally, and must be read to raise the strongest arguments that they suggest." *In re Wenegieme*, No. 16 Civ. 8107, 2017 WL 4286324, at *2 (S.D.N.Y. Sept. 26, 2017) (internal quotation marks and citations omitted). However, although "pro se litigants are generally afforded some latitude," they "are nonetheless

5

required to learn and comply with procedural rules." *In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 558 (S.D.N.Y. 2015), *aff'd*, 661 F. App'x 124 (2d Cir. 2016).

II. Application

Construed broadly, Rodriguez's brief raises two issues. First, she raises a legal challenge to the bankruptcy court's procedures. She claims that because the court proceeded with its evidentiary hearing when she did not appear, she "did not get to adequately make [her] case." Appellant Br. at 1. Second, she raises a factual challenge to the bankruptcy court's conclusion that she received constructive fraudulent transfers from Debtor. She asserts that there was insufficient evidence that she received the transfers at issue, and that the bankruptcy court failed to consider relevant facts. *Id.*

A. Trial Procedure

Rodriguez argues that she was denied an opportunity to present her case, because "in the several appearances [she] made in court for pre-trial conferences, there was never an opportunity for [her] to talk or present [her] case," and "a [judgment] was made against [her] on the day [she] didn't show despite [her] several appearances in court before the judgment was finalized." Appellant Br. at 1. The record reveals, however, that Rodriguez did not participate in several key components of the adversary proceeding leading up to trial, and that she did not appear at the trial, despite adequate notice. *See* App. at 204–33; *id.* at 251.

Rule 55 of the Federal Rules of Civil Procedure sets out the procedure courts must follow when a party "has failed to plead or otherwise defend" an action. That rule applies to adversary proceedings in bankruptcy court. Fed. R. Bankr. P. 7055. Not appearing for trial constitutes a failure to defend under Rule 55. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129–30 (2d Cir. 2011) (collecting cases). Moreover, when a trial is scheduled to proceed

and the defendant defaults by not appearing, a trial court is permitted to proceed with the trial in order to render a judgment. "When witnesses are in attendance, as was the case here, the trial court is entitled to take their testimony and proceed to complete the trial record." *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986).

Accordingly, there is no merit to Rodriguez's challenge to the procedures followed by the bankruptcy court. The court's decision to proceed to trial in Rodriguez's absence is AFFIRMED.

### B. Factual Findings

Rodriguez also argues that the bankruptcy court's factual findings were incorrect. She contends that the Trustee failed to meet his burden of proof on the issue of whether she received the transfers at issue. Appellant Br. at 1. She asserts that the evidence instead showed that some other person forged her signature on the relevant checks, and then fraudulently used her identity to deposit and withdraw those amounts from her personal account. *Id.* at 1–2.

"Claims of constructive fraudulent conveyance are governed by Section 548(a)(1)(B) [of the Bankruptcy Code], which states that a debtor may avoid a transfer if the debtor voluntarily or involuntarily . . . 'received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .'" *In re Bayou Grp., LLC*, 439 B.R. 284, 329–30 (S.D.N.Y. 2010) (quoting 11 U.S.C. § 548(a)(1)(B)).

The bankruptcy court found that between July 2012 and January 2014 Rodriguez received checks from Debtor totaling $140,450 which were deposited into her account, without providing something of value in exchange, and that Debtor was insolvent in that period. App. at 266–67; *id.* at 328–50. Consequently, it found that the payments were constructive fraudulent

7

transfers.  Rodriguez challenges only the finding that she "received" the payments.  She claims that she "ha[s] not benefited from these transfers in any manner and there is no proof that I, Vanessa Rodriguez, as a body, ever withdrew these [t]ransfers from the bank or endorsed any of these checks coming from [Debtor]." Appellant Br. at 1.  Referring to the endorsements on each check, she asserts that "[o]n the copies of checks provided to me by the [Trustee], these signatures were forged." *Id.* at 2.  In her designation of record on appeal, she contends more specifically that she was defrauded by Hamlet Peralta, who she claims forged her signature on checks, deposited them in her account, and then immediately withdrew them.  Designation of Record at 3, ECF No. 3.  She further argues that the bankruptcy court overlooked a request for investigation she filed with Chase Bank and a police report.  *Id.* at 3–4.

These arguments are insufficient to demonstrate that the bankruptcy court committed clear error.  At trial, the bankruptcy court heard testimony from the Trustee's expert in forensic accounting that each transfer was reflected in both Debtor's and Rodriguez's bank statements, that checks corresponding to each transfer were debited against Debtor's bank account, and that the account was maintained solely in Rodriguez's name.  App. at 262–64.  That evidence was enough to allow the court to find that Rodriguez received the transfers.

The bankruptcy court did not err in rejecting Rodriguez's alternate theory that Peralta forged the checks, forged her endorsement, deposited the checks in her account, and then withdrew the money as cash, all without her knowledge.  First, the court was not presented with any evidence that Rodriguez had pursued investigations with the bank, and the only evidence of the police investigation was the initial "police report" attached to her answer.  *Id.* at 186.  In any event, the mere fact that she initiated investigation would not be sufficient to show that her theory of the case was correct.  As Rodriguez acknowledged in the purported police report, her

8

version of events would have involved an elaborate scheme, because "large amounts of money could only be withdrawn by the person whose name is on the account after showing identification," and that "[t]he only explanation [bank employees] could give as to how the money could have been withdrawn without my presence is either [that] someone used a fake ID with my identity or the person had an insider in the bank allowing him/her to withdraw illegally." App. at 186. But Rodriguez did not present any evidence to the bankruptcy court that such a scheme took place, much less evidence that made her theory *more* plausible than the Trustee's theory that she was aware of and received the transfers. In agreeing with the Trustee, the bankruptcy court took a "permissible view[] of the facts," and so its finding was not clearly erroneous. *In re Kollel Mateh Efraim,* 456 B.R. at 191 (internal quotation marks and citation omitted).

Accordingly, the bankruptcy court's factual finding that Rodriguez received transfers from Debtor constituting constructive fraudulent transfers is AFFIRMED.

## CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: March 27, 2020
New York, New York

ANALISA TORRES
United States District Judge

9